**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DEBBIE A. BULLOCK, Ed.D.,

        Plaintiff,

    v.

BRANDYWINE SCHOOL DISTRICT,

        Defendant.

Civil Action No.
09-00172(RMB/AMD)


**OPINION**

Appearances:

Gary W. Aber, Esquire
Aber, Baker & Over
704 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899
    Attorneys for Plaintiff

Marc S. Casarino, Esquire
White & Williams
824 Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
    Attorneys for Defendants

BUMB, UNITED STATES DISTRICT JUDGE[1]:

**I. Introduction**

    Plaintiff Debbie A. Bullock, Ed.D., a woman of African

American descent, has sued her former employer Defendant

---

[1]    The Honorable Renee Marie Bumb, United States Judge for the
District of New Jersey, sits in the District of Delaware by
designation.

1

Brandywine School District ("the District"), alleging unlawful discrimination on the basis of race and gender and unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. The District hired Dr. Bullock as the Director of Human Resources, effective August 16, 2004. In November 2007, the District placed Dr. Bullock on a Performance Improvement Plan ("PIP"). One month later, Dr. Bullock presented the Brandywine School Board ("the Board") with a complaint reporting allegations of discrimination. Shortly thereafter, the Board placed Dr. Bullock on paid administrative leave and later issued Bullock a notice of contract non-renewal.

On January 22, 2008, Dr. Bullock filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII. After conducting an investigation, the EEOC concluded that the timing of Dr. Bullock's non-renewal notice was suggestive of retaliation, but found insufficient evidence to sustain a disparate treatment claim.

On March 13, 2009, Dr. Bullock filed the instant Complaint. The District now moves for summary judgment. Dr. Bullock also moves for summary judgment on the propriety of the District's mitigation of damages offense. For the following reasons, the District's motion is granted, in part, and denied, in part. Dr. Bullock's motion is denied.

## II. Background

### A.   Employment with the District

Dr. Bullock's employment was governed by a series of
one-year contracts.  At the time of her hire, she reported to the
District's Superintendent, who presided over an executive team
that included the District's Chief Financial Officer ("CFO")
David Blowman and Dr. Bullock.  In August 2006,[2] the District
reorganized, placing the Human Resource Department under the
supervision of the Finance Department.  As a result, Dr. Bullock
reported to Mr. Blowman, rather than the Superintendent.  Dr.
Bullock had a poor working relationship with Blowman and was
displeased by the change.

In October of that year, the District appointed a new
superintendent, James Scanlon, Ed.D.  The following month, Dr.
Bullock sent Dr. Scanlon a memorandum outlining concerns in the
Human Resources Department, specifically referencing difficulties
between the Human Resources and Finance Departments and the
change in reporting structure.  In early 2007, Dr. Scanlon issued
a survey to District personnel, which further indicated tension
between the Finance and Human Resources Departments.  On October
9, 2007, Dr. Scanlon met with Dr. Bullock to discuss the survey

---

[2]    Although Plaintiff's Opposition Brief identifies this event
occurring in 2007, Dr. Bullock's Complaint to the Board
identifies the change as occurring in 2006.  See Def. Appx. at
A53.

3

results.  Concerned about her "people skills," Dr. Scanlon issued Dr. Bullock a PIP on November 6, 2007.  No PIP was issued for Mr. Blowman.

**B.   Dr. Bullock's Complaint**

On November 30, 2007, Dr. Bullock visited the home of Joseph Brumskill, who was then President of the Brandywine School Board, and gave him a draft complaint reporting alleged discriminatory acts.  Mr. Brumskill suggested adding more details and advised Dr. Bullock to file a formal complaint with the Board.  On December 1, 2007, apparently with Dr. Bullock's consent, Mr. Brumskill transmitted the Complaint to Board members and Dr. Scanlon, at the same time noting a December 31, 2007 deadline for decisions regarding the extension or renewal of all administrator contracts.

**C.   Administrative Leave**

Four days later, on December 5, 2007, Mr. Brumskill issued a letter to Dr. Bullock, informing her that the Board had received her complaint and had retained an attorney to investigate her allegations.  The letter further informed Dr. Bullock that she would be placed on paid administrative leave.  On December 17 2007, the Board voted to approve Dr. Bullock's placement on leave and decided not to renew Dr. Bullock's contract.  On December 26, 2007, the District issued Dr. Bullock a notice of non-renewal.

After Dr. Bullock was placed on leave, the District

appointed Kim Doherty, a Caucasian woman, as acting Director of Human Resources. The District also reorganized the Finance and Human Resources Departments, causing Doherty to report to Dr. Scanlon rather than Mr. Blowman. The District concedes that the decision to restructure the Human Resources and Finance Departments was due, in part, to Dr. Bullock's complaints concerning Mr. Blowman. Plaintiff's Appendix ("Pl. App.") C129.

Dr. Bullock filed her EEOC Complaint on January 20, 2008, alleging discrimination in violation of Title VII on the basis of race and gender. Two months later, outside counsel for the District reported the results of an internal investigation, which absolved the District and its personnel of any wrongdoing. On March 18, 2008, the Board wrote to Dr. Bullock, stating that it unanimously accepted counsel's findings and informing Dr. Bullock that she had "the right to send a written rebuttal to the Board to appeal the finding," giving Bullock a March 24 deadline for any submission. Pl. Appx. C56. The letter further informed Dr. Bullock that the Board would meet on March 26 "to further discuss the implications...of [the] report." Id. Dr. Bullock sent the Board a written rebuttal on March 25.

On March 28, 2008, Dr. Bullock's attorney inquired as to the Board's position on permitting Dr. Bullock to return to work. Counsel for the District replied on April 7, 2008, stating that based on Dr. Bullock's written rebuttal, which the Board

5

characterized as "a mean spirited personal attack on most, if not all, of the people Dr. Bullock would work with on a day-to-day basis as the Director of Human Resources," the District would not permit Dr. Bulllock to return to her former position.  Pl. Appx. C58.  The District did offer Dr. Bullock two options:  (1) the possibility of serving as an administrator in Human Resources on special assignment, with the nature of the assignment subject to the "negotiation process," or (2) "[n]egotiate terms of other options suggested by Dr. Bullock, which can include severance....".  Id.  Despite this initial offer, on April 24, 2008, counsel for the District informed Dr. Bullock's attorney that "[t]he Board does not believe that Dr. Bullock should be returned to active employment" and that she would "remain on administrative leave with pay until the cessation of her contract...on June 30, 2008."  Pl. Appx. C60.

### D.   EEOC Determination

On August 26, 2008, the EEOC determined that the District violated Title VII by retaliating against Dr. Bullock by discharging her after she had complained of discrimination.  Def. Appx. A116.  On December 16, 2008, however, the Civil Rights Division of the Department of Justice informed Dr. Bullock that it would not file suit on her behalf, informing her of her right to file suit within ninety days.  See Compl. Ex. 2.  Dr. Bullock initiated this action on March 13, 2009.

## III. Standard

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)). Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

When considering a summary judgment motion, the court does not weigh evidence; rather, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving

party." <u>Meyer v. Riegel Prod. Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 252. Summary judgment is appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide,'...." <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460 (3d Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 265 (Brennan, J., dissenting)).

## IV. Analysis

### A. Employment Discrimination

The District argues that Dr. Bullock cannot establish a discrimination claim based on race or gender. Under Title VII, an employer may not "discriminate against any individual ..., because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)). Section 1981 similarly guarantees "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." The elements of both a Title VII and a § 1981 are the same. <u>Lue-Martin v. March Group</u>, Civ. No. 03-0105, 2008 WL 2966406, at *4 (D.V.I. 2008)(citing <u>Schurr v. Resorts Int'l Hotel, Inc.</u>, 196 F.3d 486,

499 (3d Cir. 1999)), aff'd, 379 Fed.Appx. 190 (3rd Cir. 2010).

Given that Dr. Bullock attempts to prove her discrimination claim under a pretext theory, the Court applies the McDonnell Douglas analysis:

> [u]nder th[is] familiar test, the plaintiff must first establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en banc)).  If a plaintiff succeeds in establishing a prima facie case, "then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action."  Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)).  Upon the proffer of defendant's reasons for the adverse action, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination."  Id.

The District concedes, for the purposes of this motion, that Dr. Bullock meets the first two elements of the prima facie test, but argues that she fails to establish an adverse employment

action under circumstances giving rise to an inference of discrimination.  Dr. Bullock urges the Court to consider the "tapestry" of the District's treatment of her as evidencing discrimination.

The Court understands Dr. Bullock to identify the following "adverse employment actions" to support her discrimination claim: (1) "the continuation of Dr. Bullock's altered reporting structure, denying her right to report to the Superintendent"; (2) the issuance of a PIP; (3) placement on paid administrative leave; (4) issuance of a contract non-renewal notice and (5) refusal to return Dr. Bullock to active employment for the remainder of her term.  Adverse employment actions have been defined "as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Reynolds v. Dep't of the Army, Civ. No. 0-3600, 2011 WL 2938101, at *2 (3d Cir. 2011)(quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998); citing Weston v. Pennsylvania, 251 F.3d 420, 430-31 (3d Cir. 2001)); see also Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999) (recognizing that although "direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non.  If an employer's act substantially decreases an employee's earning potential and causes significant

disruption in his or her working conditions, a tangible adverse employment action may be found."). Examples of adverse employment actions "include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)(quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

Clearly, the District's decisions not to renew Dr. Bullock's contract and not to permit her to return to active employment constitute adverse employment actions. See Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 320 (3d Cir. 2008) ("The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII...."). The restructuring of the Human Resources and Finance Departments under the circumstances alleged here, however, did not constitute an adverse action. The record does not indicate that maintaining the District's change in reporting structure imposed on Dr. Bullock a significant change in employment status.[3] Although she

---

[3] The District argues that Dr. Bullock cannot present evidence regarding discriminatory acts occurring prior to March 28, 2007, i.e., acts occurring 300 days prior to the filing of Dr.

Bullock's EEOC complaint.  See Riley v. Del. River and Bay Auth., 457 F. Supp. 2d 505, 510 (D. Del. 2006)("A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC.").  Thus, the District argues that any Title VII claim arising from the department restructuring would be barred given that this event took place in August 2006.

Dr. Bullock offers two responses.  First, she notes that a four year statue of limitations applies to § 1981 claims.  See Riley, 457 F.Supp.2d at 512-13 (citing Jones v. Donnelley & Sons Co., 541 U.S. 369, 383 (2004))("Because plaintiffs could not bring racial discrimination claims under Section 1981 prior to the amendments under the Civil Rights Act of 1991, the Supreme Court concluded that the plaintiff's racial discrimination claims alleged violations of the amended statute and were thus subject to a four-year statute of limitations.").  Dr. Bullock further notes that acts which are otherwise time barred by Title VII's 300-day filing period are nonetheless admissible as evidence to prove discriminatory intent.  See Stewart v. Rutgers, the State Univ., 120 F.3d 426, 433 (3d Cir. 1997) United Air Lines v. Evans, 431 U.S. 553, 558 (1977))("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.  It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.").

Although it appears that Dr. Bullock could not maintain a Title VII claim based solely on the District's restructuring, this issue is of little moment given this Court's finding that the restructuring does not constitute an adverse employment action.

Moreover, Dr. Bullock fails to establish that the restructuring occurred under circumstances giving rise to an inference of discrimination.  Quite the contrary.  Dr. Bullock offers no evidence by which a factfinder could find that the alteration in report structure occurred under circumstances giving rise to an inference of discrimination.  Dr. Bullock, herself, suggests that the change was made due to Mr. Blowman's employment negotiation with the District.  See Compl. ¶ 10 ("During the spring/summer 2006 Blowman informed the defendant that he was being considered or a position with Appoquinimink School District, as a higher salary than he was earning with the defendant, but would remain employed with the defendant if he was promoted to Assistant Superintendent and the Director of Human Resources would report Directly to him.  Rather than appoint

no longer reported directly to the Superintendent, which Dr. Bullock characterizes as a "demotion," there is no indication that this decision otherwise altered Dr. Bullock's employment title, responsibilities or benefits.

The Third Circuit has also recognized that placement on a PIP does not constitute an adverse employment action "absent accompanying changes to pay, benefits, or employment status." Reynolds, 2011 WL 2938101, at *2. The Third Circuit explained:

> ...PIPs are typically comprised of directives relating to an employee's preexisting responsibilities. In other words, far from working a change in employment status, a PIP is a method of conveying to an employee the ways in which that employee can better perform the duties that he or she already has. We note that a likely consequence of allowing suits to proceed on the basis of a PIP would be more naked claims of discrimination and greater frustration for employers seeking to improve employees' performance. Thus, because Reynolds failed to demonstrate that his PIP was accompanied by an adverse change in the conditions of his employment, we hold that Reynolds' placement on the PIP did not qualify as an adverse employment action.

Id. at *3 (footnote omitted). Dr. Bullock does not allege, and

---

Blowman to an Assistant Superintendent, the organizational structure of the defendant was changed...."). Any argument that "[m]aintaining the reporting structure...in the face of ongoing complaints by district employees" evidences discrimination also lacks merit. See Opp. Br. At 18. Presuming this statement to be true, then Dr. Bullock was treated the same as other district employees whose complaints went unheeded by the District. Moreover, the District concedes that the structure was eventually changed, based in part on Dr. Bullock's complaints. Thus, although Dr. Bullock makes much of the fact that her Caucasian successor began reporting directly to the Superintendent, crediting Dr. Bullock's advice on this issue hardly gives rise to an inference of discrimination.

the record does not suggest, that the PIP issued to her altered

her job responsibilities or employment benefits.  Thus, Dr.

Bullock fails to establish that the PIP constituted an adverse

employment action.[4]

_____

[4]    Although the Court does not find the issuance of a PIP to be
an adverse employment action, the Court acknowledges that the
District apparently failed to adhere to established policies for
issuing the PIP.  District policy called for a PIP to issue
within ten days of the most recent evaluation of the
administrator, and only where the administrator scored a 1 or 2
in any category evaluated.  Dr. Bullock did not meet this
criteria, although the Court notes that the PIP issued promptly
after Dr. Scanlon received survey results that reflected
negatively on Dr. Bullock.  Nonetheless, a failure to follow
proper procedures and policies can suggest an improper motive for
the action taken.  See Stewart, 120 F.3d at 434 (quoting Village
of Arlington Heights v. Metropolitan Housing Development Corp.,
429 U.S. 252, 267 (1977)) ("Departures from the normal procedural
sequence also might afford evidence that improper purposes are
playing a role.").

    But even assuming that Dr. Bullock could make out a prima
facie case on the basis of the PIP, she fails to establish that
the District's reasons for issuing the PIP are pretextual.  To
succeed in establishing her claim, Dr. Bullock "must point to
some evidence, direct or circumstantial, from which a factfinder
could reasonably either (1) disbelieve the employer's articulated
legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action."  Fuentes v.
Perskie, 32 F.3d 759, 764 (3d Cir 1994).

    The District maintains that the PIP issued in response to
the negative comments received about Dr. Bullock in the 2007
survey.  Dr. Scanlon noted the following from his interviews with
members of both the Human Resources and Finance Departments:
one of the "common theme" of the interviews was that "[p]eople
feel stress in HR and are afraid of retaliation by Debbie
Bullock.  2 people were in tears while speaking with me,"; "15 of
the 22 people interviewed believed the tension was being caused
by the Director of HR"; and "8 of the 22 people made statements
indicating that the Director in HR has said to members in the HR
department not to speak with Finance, and/or she is going to 'get
her department back.'"  Def. App. A100.  Members of the Human
Resources Department made the following statements to Dr.

Dr. Bullock's placement on paid leave presents a somewhat

closer question. Most courts who have considered the issue have

Scanlon:

> "It's a very depressing place to work and I wonder what
> event will happen each day."

> "It is not encouraged to be open and honest in HR."

> "Since the change was made for the HR Director to report to
> the CFO, it has been hell work in HR."

> "I e-mail the Director of HR to avoid discussion with her
> because when I ask questions she rolls her eyes at me."

> "It's been a roller coaster ride in HR and now the director
> is on a binge to get her department back."

> "The director of HR is condescending and mean to people in
> the department."

> We have been told by the Director of HR not to associate
> with people outside of HR."

> "HR is not helpful nor user friendly."

Id. at A101.

Dr. Bullock argues that the tension between the Human
Resources and Finance Departments was a "'two-way' street, with
equal responsibility all around," i.e., that Mr. Blowman was
equally at fault. By essentially conceding that the tension did
exist, Dr. Bullock fails to discredit the reason for the PIP
proffered by the District. Moreover, Dr. Bullock cannot survive
summary judgment by showing that the District's decision in
issuing her the PIP was wrong or mistaken, "since the factual
dispute at issue is whether discriminatory animus motivated the
employer, not whether the employer is wise, shrewd, prudent, or
competent." Fuentes, 32 F.3d at 765. Dr. Bullock may disagree
with the District's failure to issue Mr. Blowman a PIP, but such
disagreement over a business judgment does not establish pretext.
Dr. Bullock fails to raise any genuine dispute as to the
District's reasons for issuing the PIP.

not found paid administrative leave to constitute an adverse employment action.  See Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006) (agreeing with the Fourth, Fifth, Sixth and Eighth Circuits "that an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."); see also Killen v. Northwestern Human Services, Inc., Civ. No. 06-4100, 2007 WL 2684541, at *4 (E.D.Pa. 2007) ("Although our Court of Appeals has not addressed this issue, those courts of appeals that have done so have found that placing an employee on paid administrative leave where there is no presumption of termination is not an adverse action for discrimination purposes.")(footnotes omitted). Dr. Bullock argues that the District deviated from its policy to place her on leave, noting that Mr. Brumskill, the School Board President, inappropriately acted by Board "consensus" when he notified Bullock that she would be placed on leave.  Only after Dr. Bullock was already notified did the Board vote to approve the action.

But even assuming that Dr. Bullock's placement on paid leave, under the circumstances alleged here, constitutes an adverse employment action, she points to nothing in the record suggestive of the District's discriminatory intent.  Dr. Bullock has not established that other employees were not placed on leave

or were otherwise treated more favorably than she. Dr. Bullock's claims based the Districts' decisions not to renew her contract and not to permit her to return to active employment fail for the same reasons. Again, nothing in the record demonstrate that other similarly-situated employees were treated more favorably.

Presuming, however, that she could state a prima facie case for discrimination on these bases, she nonetheless fails to offer evidence suggesting that the District's proffered reasons for its decision not to renew Dr. Bullock's contract, and not to permit Dr. Bullock to return to active employment, are a pretext for discrimination. To survive summary judgment, Dr. Bullock "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Said differently,

> because the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons ..., a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (I) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

Id. (internal citation omitted).

17

It is not enough for plaintiff to "show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765. To survive summary judgment, "the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence'...." Id. (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir.1992)). In other words, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons ... was either a post hoc fabrication or otherwise did not actually motivate the employment action." Id. at 764.

Noting that Title 14 of the Delaware Administrative Code, section 725-2.0 requires the District to provide school administrators with six months notice of an intent to non-renew a contract, the District avers that its practice is to issue non-renewal notices to all administrators placed on a PIP. Thus, the District issued Dr. Bullock a non-renewal notice because she was placed on a PIP. Dr. Bullock has not succeeded in discrediting this explanation. She fails to demonstrate that other

administrators who had been placed on a PIP did not receive a non-renewal notice.  Having failed to raise a genuine dispute on this issue, she cannot survive summary judgment.

Dr. Bullock's claim based on the District's decision not to return her to active employment for the remainder of her contract fails for the same reason.  Correspondence with the District shows that the decision not to permit Dr. Bullock's return was based on the content of her rebuttal to the District's internal investigation findings.  The District characterized the document as "a mean spirited personal attack on most, if not all, of the people Dr. Bullock would work with on a day-to-day basis as the Director of Human Resources."  Again, Dr. Bullock points to nothing in the record to suggest that the true motivation for the District's decision was based on discriminatory animus.  She offers no evidence that other employees were treated more favorably under similar circumstances.  The District is entitled to judgment as a matter of law on this issue.

Given that Dr. Bullock has failed to establish a prima face case for discrimination, or otherwise adduce evidence from which a factfinder could find that discrimination was more likely than not the motivating or determinative cause for the District's actions, her claims cannot survive.  Dr. Bullock's Title VII and § 1981 claims for racial and gender discrimination are hereby dismissed.

**B.    Retaliation**

By contrast, the Court finds that Dr. Bullock has raised genuine issues of fact with regard to her Title VII and § 1981 retaliation claims that must be decided by a jury.  To establish a prima facie case of retaliation, Dr. Bullock must demonstrate three elements:  (1) she engaged in activity protected activity; (2) the District took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.  See Hutchins v. United Parcel Service, Inc., 197 Fed.Appx. 152, 156 (3d Cir. 2006).  These elements are met here.

Dr. Bullock's submission to the Brandywine School Board complaining of discriminatory treatment, as well as her EEOC complaint, qualify as protected activities.  See Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 450 F.3d 130, 135 (3d Cir. 2006)(recognizing formal EEOC complaints, as well as informal complaints to management, qualify as protected activity for purposes of a retaliation claim).  Dr. Bullock identifies three adverse employment actions that followed the submission of her complaints: (1) placement on paid administrative leave; (2) the issuance of a contract non-renewal notice; and (3) the decision not to return her to active employment.  Placement on paid leave can qualify as an adverse employment action for purposes of a retaliation claim.  See Killen, 2007 WL 2684541, at

*7. Issuance of a non-renewal notice and the decision not to permit Dr. Bullock to return to active employment unquestionably qualify as adverse actions.

As for establishing a causal connection between these adverse actions and Dr. Bullock's protected activity, "[I]ndirect evidence of retaliation may suffice to establish a causal connection." Hutchins, 197 Fed.Appx. at 157 (citing Abramson v. William Paterson College, 260 F.3d 265, 288 (3d Cir. 2001)). The record demonstrates that on December 1, 2007, Mr. Brumskill transmitted Dr. Bullock's discrimination complaint to the Board and further noted a December 31, 2007 deadline for decisions regarding the extension or renewal of all administrator contracts. Four days later, Mr. Brumskill informed Dr. Bulloock, that she would be placed on leave. Viewing the facts in a light most favorable to Dr. Bullock, these events suffice to establish a causal link between Dr. Bullock's complaint and the decision not to renew Dr. Bullock's contract. The record further demonstrates that the District determined that Dr. Bullock would not be permitted to return from paid leave based on her rebuttal to the District's in-house investigation of her discrimination claims.

The District, of course, maintains that the non-renewal notice issued as a matter of District policy. But given that Mr. Brumskill transmitted Dr. Bullock's discrimination complaint to

the Board, specifically noting that December 31, 2007 was the deadline for decisions renewal of all administrator contracts, a genuine dispute exists regarding the District's motives for issuing Dr. Bullock the non-renewal. Similarly, the record demonstrates that the District based its decision not to permit Dr. Bullock to return to active employment on her rebuttal of the District's internal investigation regarding his discrimination claims. A jury should determine whether the District's decision was retaliatory.

### C.    Punitive Damages

The District rightly notes that Dr. Bullock to prove entitlement to punitive damages, she must establish that the District "acted with malice or reckless indifference to [her] federally protected rights." Carter v. Delaware State Univ., Civ. No. 99-642, 2002 WL 335309, at *9 (D.Del. 2002)(quoting Lafate v. Chase Manhattan Bank (USA), 123 F.Supp.2d 773, 784 (D.Del. 2000)), aff'd, 65 Fed.Appx. 397 (3rd Cir. 2003). The Court finds that triable issues of fact exist regarding whether the District acted with malice or reckless indifference to Dr. Bullock's rights. The Court therefore denies the District's request for summary judgment on Dr. Bullock's punitive damages claim.

### D.    Affirmative Defense

Dr. Bullock styles her motion to bar the District from

asserting the affirmative defense that she failed to mitigate her damages as one for summary judgment.[5]  Because the Court finds that the sufficiency of this defense turns on issues of material fact that must be determined by a jury, Dr. Bullock's motion is denied.  <u>See</u>, <u>e.g.</u>, <u>Burlington v. News Corp.</u>, 759 F.Supp.2d 580, 603 (E.D.Pa. 2010)("There is a genuine issue of material fact regarding whether Plaintiff exercised reasonable diligence in attempting to secure employment as a broadcaster, and whether substantially equivalent work was available to Plaintiff.").

---

[5]     "Courts differ as to whether a motion for summary judgment is the appropriate procedure by which to challenge an affirmative defense."  <u>Professional Buyer's Guild, LLC v. Ace Fire Underwriter Ins. Co.</u>, Civ. No. 06-2127, 2007 WL 3227183, at *1 n.1 (D.N.J. Oct. 30, 2007) (citing <u>United States v. Manzo</u>, 182 F.Supp.2d 385, 395 n.6 (D.N.J. 2000) ("Because both parties refer to matters outside the pleadings and for the sake of consistency and clarity, the Court will generally treat the motion to strike as a motion for summary judgment."); <u>Krauss v. Keibler-Thompson Corp.</u>, 72 F.R.D. 615, 616 (D. Del. 1976) ("The weight of authority and a close textual examination of the Rules convinces this Court that a motion to strike an affirmative defense can be considered only as a Rule 12(f) motion....").  Given that both parties briefed the motion as one for summary judgment, the court will consider the motion on this basis.

**V.    CONCLUSION**

For the aforementioned reasons, the District's Motion for Summary Judgment is granted, in part, and denied, in part.  Dr. Bullock's Motion for Summary Judgment is denied.  An appropriate Order will issue this date.


Dated: August 18, 2011          s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE